UNITED STATES *v.* SHERMAN & SONS COMPANY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 541. Argued December 17, 18, 1914.—Decided April 5, 1915.

The Government will not allow foreign goods to be brought into this country and then litigate with the importer as to the amount of duty. The duty, as assessed by the Collector, must be paid in any event, not only as a condition of entering the goods, but also as a condition of the right to file a protest. After payment and protest the importer may exercise a right of review under the statutory method and procedure provided therefor.

The assessment and collection of duties is an administrative matter, no notice or hearing being necessary where the assessment is *in rem* and against the foreign goods sought to be entered.

In case of fraud, inability on the part of the Government to proceed *in rem* against goods fraudulently entered would not prevent it from enforcing the personal liability of the importer in a suit *in personam*. *United States v. National Fiber Co.,* 133 Fed. Rep. 596, approved.

An importer is not concluded by a reliquidation order made more than one year after the entry where the complaint contains no allegation of the presence of a protest or of fraud; but may file his plea and be heard in his defense as in other cases even though he did not file a protest and make the payment required in the case of the original liquidation.

In a suit brought against an importer to recover the amount of duty

assessed under a reliquidation made more than a year after the original liquidation the Government must conform to the general rule of pleading where recovery is sought on the ground of fraud.

THESE two test cases raise the question of the power of the Collector of Customs to make a reliquidation more than a year after the duty on foreign merchandise has been paid and the imported goods have been removed for consumption. The cases are here on a certificate which shows that in 1909 Sherman & Sons Company imported certain laces from Syria and Egypt. The merchandise was entered at the Port of New York and the duty thereon was assessed by the Collector. The amount of duty thus liquidated was paid by the importer and the goods were removed in 1909.

More than four years thereafter the Collector made a new assessment, or reliquidation, by which he increased the amount of duties to be paid on the laces. Notice of the reliquidation was given by the Collector to Sherman & Sons Company. They filed no protest within the 15 day period mentioned in the Tariff Act of 1909, 36 Stat. 100, § 14, and thereafter two suits were brought by the Government, in the United States District Court for the Southern District of New York, for the recovery of the difference between the duty assessed and paid in 1909 and that fixed by the reliquidation in 1913.

The only substantial difference between the two cases is. that in No. 1 the suit was on a Liquidation Order which contained no charge that the importer had been guilty of fraud; while in No. 2 the action is based on a Reliquidation Order which contained a statement that the "entries were reliquidated by the said collector, as aforesaid, pursuant to his findings and decisions that they, as well as the consular invoices presented with them, upon the basis of which the said entries were originally liquidated, as aforesaid, were false and fraudulent, and that the original

liquidations and the delivery of the said goods, wares, and merchandise, aforesaid, had been effected by and through the fraud of the defendant."

In both suits the District Court sustained the demurrer and the United States electing not to plead over, both actions were dismissed. The cases were then taken to the Circuit Court of Appeals, which certified the following questions:

"(1) Can an importer of dutiable merchandise, when sued by the United States for a balance of duties found to be due upon a reliquidation of the entry, attack the validity of the reliquidation, where it appears upon the face of the complaint that the reliquidation was made more than a year after the entry, and where the complaint contains no allegation of the presence of a protest or of fraud, or is the remedy provided by the Customs Administrative Act (act of June 10, 1890, and act of August 5, 1909, 26 Stat. 136 and 36 Stat. 100), viz., of protest, payment of the full amount of duties ascertained to be due upon the reliquidation and appeal to the board of general appraisers, and thence to the courts, the only way in which he may attack the validity of the reliquidation?

"(2) Does the complaint in action No. 1 herein, all of the allegations in which, with the exception of the formal allegations of sovereignty and incorporation, are hereinabove set forth, state a good cause of action?

"(3) If the foregoing question is answered in the negative, then is it sufficient for the United States in order to state a good cause of action to allege the finding or decision of the collector that there was fraud, as in action No. 2 herein, without alleging in what connection the collector had made his finding or decision of fraud, i. e., whether he had found fraud in the dutiable value, or in the classification, or in the quantity of the merchandise, and without alleging the presence of fraud as a fact or the facts constituting the fraud?"

*Mr. Assistant Attorney General Warren* for the United States:

The special method and special tribunals provided by Congress for the correction of errors of tax officials are exclusive, and if, under the tariff act of 1909, the importer fails to protest and appeal to the Board of General Appraisers and the United States Court of Customs Appeals he cannot contest the validity of the liquidation or re-liquidation of duties when sued by the Government in the District Court.

The action or decision of the collector of customs upon the facts when acting in a discretionary or judicial capacity is conclusive and cannot be reviewed by the courts except when and in the manner permitted by statute.

The act of June 22, 1874, § 21, is a statute of limitation. It can be taken advantage of by importer only by means of a plea or answer as a matter of defense.

The objection that the rule contended for by the Government casts upon the importer the burden of proving a negative, i. e., the absence of fraud in the original entry or liquidation, is not a sound one. Such a burden is often cast upon one of the parties to a legal controversy.

*Mr. Thomas M. Lane* and *Mr. James M. Beck* for Sherman & Sons Company.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

The questions certified by the Circuit Court of Appeals involve an inquiry as to whether the Collector of Customs, after the expiration of one year, can make a finding of fraud and thereupon make a reliquidation of duties which is final unless, within 15 days, the importer pays the amount thus

declared to be due so as to secure the right to a hearing (1) on the finding of fraud and (2) on the correctness of the new assessment on goods which had been removed for consumption.

On the part of the Government it is claimed that this power is conferred by § 21 of the act of 1874; [1] but it is a significant fact that although the act has been in force for more than 40 years there are only two instances reported, in which the Collector, after the expiration of one year, has attempted to reliquidate because of the existence of fraud. Those two cases (*United States* v. *Vitelli*, Customs Ct. of Appeals (1914) and *United States* v. *Federal Sugar Co.*, 211 Fed. Rep. 1016) are of recent date and in direct conflict with each other.

The novelty of the practice, the conflict in the two decisions and the statement that numerous suits on similar reliquidation orders are now pending, justify a somewhat detailed examination of the authority conferred upon the Collector by the Tariff Act of 1909,[2] 36 Stat., p. 100, § 14;

---

[1] "That whenever any goods, . . . shall have been entered and passed free of duty, and whenever duties upon any imported goods, . . . shall have been liquidated and paid, and such goods, . . . shall have been delivered to the owner, . . . such entry and passage free of duty, and *such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties.*" Act of June 24, 1874, 18 Stat. 190, § 21.

[2] Subsec. 14. "*The decision of the Collector as to the rate and amount of duties chargeable upon imported merchandise . . . shall be final and conclusive* against all persons interested therein unless the owner . . . shall, within 15 days after . . . ascertainment and liquidation of duties, . . . if dissatisfied with such decision, give notice in writing to the Collector . . . the reasons for his objections thereto, and *if. the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon.* Upon such notice and payment the Collector shall transmit

p. 98, § 12; the act of 1874,[1] 18 Stat. 190, and the Customs Regulations prescribing the method of liquidating duties and defining the effect of liquidation orders.

An analysis of the various provisions bearing on the subject shows, that when foreign merchandise is to be entered at a domestic port, the owner files his statutory Declaration, together with the invoice, account and list of the goods sought to be imported. *United States* v. *Salen,* 235 U. S. 237. The Surveyor gives a certificate as to weight or quantity, and the Appraiser issues a certificate of value. (Customs Regulations, 861, 1431, 1481, 1484.) With these documents before him—and with the privilege of examining witnesses "touching any matter deemed material in ascertaining the dutiable value and classification of the merchandise,"—the Collector determines the rate of duty to be imposed under the Tariff Act and thereupon calculates, assesses and liquidates the amount to be paid. His decision, as to the amount of duty is final—unless within 15 days the importer files a protest and pays the full amount of duty thus liquidated. In that event the Collector is required to transmit the invoice and all the papers connected therewith to the Board of Nine General Appraisers for their determination of the questions raised by the protest. From them the case can be taken to the Court of Customs Appeals. If the decision

the invoice and all the papers and exhibits connected therewith to the Board of Nine General Appraisers, for due assignment and determination. . . . Such determination shall be final . . . except in cases where an application shall be filed in the . . . Court of Customs Appeals within the time and in the method provided for in this act." § 28, Subsec. 14, Tariff Act of 1909, 36 Stat. 100.

"All notices in writing to Collectors of dissatisfaction of any decision thereof as to the rate or amount of duties chargeable upon imported merchandise, . . . with the invoice and all papers and exhibits, shall be forwarded to the Board of Nine General Appraisers . . . 36 Stat. 98, subsec. 12.

[1] See note 1, page 150.

is in favor of the importer provision is made for a refund of any overcharge assessed against him.

If, however, there is no such protest, payment and appeal, the Collector's decision is *final as to the amount of duty* (36 Stat. 100, subsection 14) except that for one year—certainly when the goods have not passed beyond his reach (*Iasigi* v. *Collector*, 1 Wall. 384),—the Collector, like a court during the term at which a judgment is entered, has full control of the assessment, and may on his own motion set aside his first order and make a reliquidation. *Robertson* v. *Downing*, 127 U. S. 613. Where there is no such renewal or continuance of the original proceeding, but, where the duty is paid, as assessed, the statute (18 Stat. 190, § 21) provides that the *"settlement shall, after the expiration of one year, in the absence of fraud, be final and conclusive upon all parties."*

1. This brief review of the many and detailed provisions of the statutes will suffice to show that the Government will not allow foreign goods to be brought into this country and then litigate with the importer as to the amount of duty. Neither bond, nor security, nor retention of the goods during litigation, will dispense with the necessity of payment. The duty, as assessed by the Collector, must be paid in any event,—not only as a condition of the goods being entered, but also as a condition of the right to file a protest. When that has been done, Congress, in order to prevent injustice, has given the importer, who thus pays and protests, the right to bring the goods into the United States, has granted him the opportunity to review the finding of the Collector and has also given him the promise of a refund in case the Collector is found to have made an overcharge. (36 Stat. 103, subsection 23.) But this right of review is not an appeal in ordinary course of law and can be exercised only in the statutory method, on statutory conditions before special statutory tribunals of limited jurisdiction.

2. This summary method of collection, and the requirement that duties be paid as assessed before the right to litigate arises, is an incident of the fact that the assessment and collection of duties is an administrative matter—no notice or hearing being necessary since the assessment is *in rem* and against the foreign goods which are sought to be entered. The amount is determined by inspection of experts, and payment is enforced against the merchandise actually in custody of the customs officers, who cannot permit its removal until the assessed charges have been paid.

If, after the duty had been paid and the goods had been removed, it should be made to appear that they had been fraudulently entered and were still in the possession of the importer, they could be retaken and condemned in forfeiture proceedings. Or, if after the expiration of one year it should be discovered that, as alleged in the present case, there had been false invoices, false weights, or fraud of any kind, by which the United States had been deprived of its just dues, and if the goods themselves could not be found, so as to be forfeited, the inability to proceed *in rem* would not prevent the Government from bringing a suit *in personam* to enforce the importer's personal liability for the debt which accrued and which rightfully should have been paid when the foreign merchandise was entered at the domestic port.

This is illustrated by the decision in *United States v. National Fiber Company*, 133 Fed. Rep. 596, cited by the Government on another branch of the argument. It there appeared that certain bales of *flax* had been fraudulently entered as *waste-paper stock*. In the suit brought in a Federal court to recover the duties that should have been paid, the importer insisted that the Government was limited to the summary and statutory method of liquidation above mentioned, claiming that "as soon as property is fraudulently withdrawn the power to collect the duty

ceases, and fines, penalties and forfeitures are imposed."
In answering this contention the court cited *Meredith* v.
*United States,* 13 Pet. 486, and quoted the following cor-
rect statement of the law in *United States* v. *Cobb,* 11 Fed.
Rep. 78:

"The summary proceedings which the customs officers
are required by law to take against the goods are in the
nature of proceedings *in rem,* but are not the sole remedies
of the Government for the collection of the duties.   .   .   .
The act makes the duties a personal debt or charge upon
the importer which accrues to the Government upon the
arrival of the goods at the proper port of entry.   They are
due although the goods have been smuggled, or for any
reason have never come to the hands of the customs offi-
cers, or the statutory proceedings have never been in-
stituted, or through accident, mistake, or fraud no duties
or short duties have been paid.   The importer is not dis-
charged from his debt by a delivery to him of the goods
without payment."

3. It is said, however, that even if the United States
can bring a suit, against the importer, to recover a per-
sonal judgment for the duties on goods fraudulently under-
valued, that does not deprive the Collector of the power
to reliquidate impliedly given by the act of 1874.   And
it is further argued that, where such statutory method of
liquidation is adopted by the Collector, only the statutory
method of defense, by protest and payment, is available
to the importer.   As the importers here filed no protest and
made no payment of the duty reliquidated in 1913, it is
said that the Collector's finding is as conclusive as was his
original liquidation in 1909.

But while the tariff act makes the decision of the Col-
lector final as "*to the rates and amount of duties*"; and while
the act of 1874 provides that when such duties have been
paid "*such settlement,* after the expiration of one year, and
in the absence of fraud, *shall be final and conclusive,*"—yet

in neither of these laws did Congress authorize the Collector to make findings of fraud. Those statutes relate to a power to be exercised when the foreign merchandise was in the custody of the customs officers. By virtue of that possession they were not obliged to hear testimony, but by inspection could determine weight, value and classification, and, as experts (*In re Muser,* 49 Fed. Rep. 831), perform the administrative function of liquidating the amount of duty that must be paid before such foreign goods could be brought into the country.

To that judgment *in rem,* against particular goods in custody, the statute gave a certain quality of finality. But a wholly different situation, and one not provided for by statute, would arise if, after the expiration of the year, the Collector—or his successor in office who had no knowledge of the original transaction—should undertake to reliquidate duties on goods that had been removed and consumed. In such case—the merchandise not being in possession of the customs officers—the essential facts as to weight, value and classification could not be determined by the inspection of experts, as contemplated by law, but would depend upon the testimony of witnesses. If in addition to this new, and non-statutory, method of fixing the amount of duty there is to be added a jurisdiction authorizing the Collector to declare that there had been fraud in the procurement of the original liquidation, it will be seen that the limited administrative power to make a *quasi*-judgment *in rem,* against goods in possession, has grown with the lapse of time, and that the authority claimed for the Collector on reliquidation is far more extensive than that exercised when the original order was entered. For, according to the argument now made, he can, after the expiration of one year, not only hear testimony as to the value of goods not in possession, but, without notice to the importer, can declare him to have been guilty of fraud and make that finding of fraud and value

conclusive unless, within 15 days, the importer protests and pays the amount of the reassessment as the condition of the right to defend. If, within the 15 days, the importer protests but is unable to make such payment, it is claimed that such reliquidation becomes conclusive, so that in a suit to collect the sum thus declared to be due, the Government is not only relieved from the burden of proving the Collector's charge of fraud, but the importer would not be permitted to defend, even to establish his innocence.

The statement of the proposition is well calculated to raise a doubt as to its correctness. *Sahariego* v. *Maverick*, 124 U. S. 261, 291–293. For if the Collector, after one year, can determine that there had been fraud, and thereupon can make a reliquidation having such characteristics of finality as is here claimed for his finding, he can, as in the present case, do so at the end of 4 years; or as in the *Vitelli Case*, after 7 years; or, as in other pending cases referred to in the argument, after 15 years. If—after such a lapse of time, in which parties may die, witnesses may remove or documents be lost—the Collector can make a finding of fraud which can be resisted only upon condition of paying the amount of the reliquidated duties, then there will be many instances in which the importer, and many more instances in which his heirs, will be unable to make the cash payment so as to secure the right to prove that there was no fraud either in fact or in law.

Whether such right to defend, granted on such onerous and sometimes impossible conditions, would afford due process of law to the citizen, otherwise liable to be bound *in personam* by such reliquidation, need not be discussed. For certainly such a power will not be implied and none such can be found in the Tariff Act of 1909 or in § 21 of the act of 1874. They provide that in the absence of protest a finding of *value* is conclusive and that the *settlement,*

in accordance with that finding, is, "   .   .   .   in the absence of fraud, final and conclusive."

But there is no provision as to the method in which, or the tribunal before which, the existence of the nullifying fraud can be determined. The silence of Congress on that subject, however, cannot be construed as the expression of an intent to enlarge the administrative function of the Collector into power and jurisdiction to declare that, years before, there had been fraud in the procurement of the order liquidating duties on goods removed.

On the contrary, the failure to make special provision, as to the method of setting aside such orders for fraud, was a recognition of the fact that the determination of the question as to whether there was fraud involved an exercise of the judicial rather than the executive function and that therefore such orders were subject to the general provisions of law by which any other fraudulent judgment can be set aside by the courts in proceedings seasonably begun. *Bailey* v. *Glover*, 21 Wall. 342. By such general law the party sought to be affected must be informed of the nature of the fraud which the complainant undertakes to establish and must be given notice and opportunity to be heard in his defense, before the old order can be set aside and a new order entered.

This conclusion is not in conflict with the principle which recognizes that the Government may proceed *in rem* against foreign goods sought to be entered; or without a judicial hearing, may determine the amount of taxes due by a citizen, and make that administrative finding a lien, which can be resisted only on condition that bond and security be given to pay what is *prima facie* a valid lien on the property of the taxpayer. *McMillen* v. *Anderson*, 95 U. S. 37. For it is not claimed that the reliquidation order here is a general or a special lien, but only that it forms the basis of a suit in which a judgment *in personam* can be obtained. In such a suit the fraud relied on must

be alleged and proved. To sustain the Government's contention that the Collector's finding, was conclusive unless protest and payment had been made would be equivalent to saying that a charge of fraud in procuring goods, whether made by a Collector or by a Grand Jury, could be made conclusive, unless before the trial the defendant restored the goods or their value.

These conclusions indicate the general nature of the answer to be given to the questions certified by the Circuit Court of Appeals—though their form is such as to make it impossible to give a categorical answer of Yes or No.

1. As to the question marked 1, we hold that the importer is not concluded by the reliquidation order, and when suit is brought for the amount claimed to be due he may file his plea and be heard in his defense as in other cases, even though he did not file a protest and make the payment required in the case of the original liquidation.

2. The question marked 2 we answer No.

3. To the question marked 3, we answer No—the Government in such a suit being obliged to conform to the general rule of pleading where recovery is sought on the ground of fraud.

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.