**KREUTZ et al. v. DURNING, Collector of Customs, et al.**

**No. 123.**

Circuit Court of Appeals, Second Circuit.

March 12, 1934.

William L. Wemple and Arthur Garfield Hays, both of New York City, and Roszel C. Thomsen, of Baltimore, Md., for appellants.

Martin Conboy, U. S. Atty., of New York City (Samuel C. Coleman and Irvin C. Rutter, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree dismissing a suit in equity filed by a firm of domestic importers of matches to enjoin the Collector of Customs of the Port of New York from assessing against them customs duties, under the "Anti Dumping Act" (title 2 of the Emergency Tariff Act of 1921 [19 USCA §§ 160–173]). The cause came up upon the pleadings alone, and the judge dismissed the suit because the plaintiffs had an adequate remedy at law. The plaintiffs argued that the act was unconstitutional in that the importer had no adequate way to challenge the action of the Secretary of the Treasury and his subordinates, who assess the duty. Section 201 (a) of the Act (19 USCA § 160 (a) requires the Secretary, in case he concludes after investigation that a local industry may be injured because competing merchandise is

likely to be sold in the United States "at less than its fair value," to make a public finding to that effect. Subdivision (b), 19 USCA § 160 (b), directs any appraiser to notify the Secretary if he suspects "that the purchase price" of any imported merchandise "is less, or that the exporter's sales price is less or likely to be less, than the foreign market value (or, in the absence of such value, than the cost of production)." After the Secretary has made such a public finding, section 202 (a), 19 USCA § 161 (a) imposes, in addition to other duties, "a special dumping duty" equal to the difference between "the purchase price or the exporter's sales price" and "the foreign market value (or, in the absence of such value * * * the cost of production)." Later sections define the four terms used in this equation.

■ The Secretary, by article 712 of the Customs Regulations of 1923, provided that "merchandise is sold at less than its fair value within the meaning of section 201 (a) of the Act, if the purchase price or exporter's sale price of such merchandise is less than its foreign market value (or cost of production)." The plaintiffs' first complaint is, that this regulation is not in accordance with the statute; that sales in the United States are not necessarily made at less than fair value, because the purchase price, or exporter's sales price, is less than the foreign market price, or cost of production. It may indeed be true that merchandise is "likely to be sold in the United States * * * at less than its fair value," in other cases than those in which the regulation applies. But that is not important, provided that, whenever the regulation does apply the merchandise is "likely to be sold at less * * * than its fair value." The Secretary may not have used all his powers, and may have been at fault for that reason; but the importer cannot complain unless he has exceeded them. He has certainly not exceeded them in so defining his duties, because the very "dumping duty" itself is measured in the terms of the regulation.

■ The gravamen of the suit lies, however, elsewhere, as we understand it; it is that the finding of the Secretary is made ex parte and yet concludes the importer; further that the duty is imposed by the collector and that from his decision no appeal exists except to the Customs Court and thereafter to the Court of Customs and Patent Appeals, both of which are not "constitutional," but "legislative," courts. As such they afford no sufficient relief; a citizen must be given access somewhere to a true court before his money may be taken. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. Moreover, even if this be not true, the importer must pay the duty before he can appeal to the Customs Court from the collector's liquidation (section 1515, title 19, U. S. Code [19 USCA § 1515]). Finally the statute is retroactive and uncertain, for the importer cannot know when he brings in goods whether he will be taxed or by what standard. For all these reasons the act is unconstitutional.

The prescribed procedure is that after the Secretary by his declaration has set the machinery in motion, an appraiser fixes, and reports to the collector, the elements from which the duty is to be computed; the purchase price, the exporter's sale price, the foreign market value, or the cost of production. Section 209 (19 USCA § 168). From these the collector will compute the duty by a simple subtraction of the purchase price or exporter's sales price from the foreign market value or cost of production. That is merely a ministerial duty. The importer then may "appeal to reappraisement" from the appraisal to the Customs Court (section 210 [19 USCA § 168]); his appeal staying liquidation meanwhile (article 737, Regulations of 1923). That appeal is in effect a trial de novo; the importer may appear, cross-examine witnesses, introduce his own evidence, and in general conduct himself as a party in court (section 1501, title 19, U. S. Code [19 USCA § 1501]). At the conclusion he may appeal to a court of three judges of the Customs Court and from that court to the Court of Customs and Patent Appeals (Jud. Code § 198, section 310, title 28, U. S. Code [28 USCA § 310]); and finally in some cases the Supreme Court may issue certiorari, though not on mere questions of value (Jud. Code § 195, section 308, title 28, U. S. Code [28 USCA § 308]). Such is the procedure which is thought to be so inadequate as to make the act unconstitutional.

Beneath all the objections rests the implication that in collecting customs duties the government must accord its citizens a day in court, a judicial tribunal, apparently a "constitutional court," which the Court of Customs and Patent Appeals is not. Ex parte Bakelite Corporation, 279 U. S. 438, 49 S. Ct. 411, 73 L. Ed. 789. That has certainly not hitherto been the understanding of the Supreme Court. Cary v. Curtis, 3 How. 236, 11 L. Ed. 576; Den ex dem. Murray v. Hoboken Land & Improvement Co., 18 How. 272, 15 L. Ed. 372; Hilton v. Merritt, 110

U. S. 97, 107, 3 S. Ct. 548, 28 L. Ed. 83; Auffmordt v. Hedden, 137 U. S. 310, 324, 329, 11 S. Ct. 103, 34 L. Ed. 674; Ex parte Bakelite Corporation, supra, 279 U. S. 458, 49 S. Ct. 411, 73 L. Ed. 789. The argument is that it is Crowell v. Benson, supra, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598, which has effected the change; it is Crowell v. Benson which laid it down generally that the findings of an administrative officer could not become the basis for depriving a citizen of his property; the Constitution secured him recourse ab initio to a court, to a "constitutional," not "legislative," court. In fact Crowell v. Benson decided nothing of the sort; its doctrine was expressly confined, first, to underlying, "jurisdictional" facts on which a court's power rests; second, to transactions inter partes; dealings of the government with its citizens were expressly excluded. See note (1933) 46 Harv. L. Rev. 478. Were its scope not so confined, it would have overthrown the accepted procedure of the Interstate Commerce Commission, the Federal Trade Commission, the Shipping Board, the Board of Tax Appeals, and, we should suppose, the assessment of damages in the admiralty by a commissioner. The opinion nowhere intimated that any judicial review was necessary in customs collections. Here indeed we need not go so far; arguendo we could safely assume that somewhere before the importer pays, he must have access to a court, not indeed a "constitutional" court, but a tribunal governed by the procedural rules of a court, with the same incidental powers and staffed by officials, independent of executive control, whose tenure is on good behaviour and whose duties exclude them from other occupation (section 1518, title 19, U. S. Code [19 USCA § 1518]). Such a tribunal is the Customs Court; it offers the same protection against unlawful exactions as a "constitutional" court; its decisions, pro hac vice at least, are due process of law. Even plainer is the status of the Court of Customs and Patent Appeals (sections 301, 301b, title 28, U. S. Code [28 USCA §§ 301, 301b]), to which the dissatisfied importer may appeal. On what theory it can be supposed that these together do not give an adequate remedy, we find it difficult to understand.

Nor is it of moment that the Secretary makes his preliminary finding ex parte and in camera. That is indeed a condition upon the duty, but a condition whose verification becomes inevitable before the importer can be touched. As the Secretary has construed his duties, his finding that some duty is due is based upon the same equation that the Customs Court must use to find what duty is due. Those elements being the relevant issues in that court, and by it judicially determined, govern the incidence and amount of the duty; if the court finds against the importer, they have incidentally vindicated the Secretary. Moreover, as the appraisement determines everything and can go to completion while the liquidation is suspended, the importer has the substance of his controversy settled without paying a cent; it is only upon appeal by "protest" from the collector's liquidation that the duty must be paid (section 1515, title 19, U. S. Code [19 USCA § 1515]). Before that time arrives all the merits will have been settled.

Finally, we can see no grievance in the supposed retroactive feature of the act. It is quite true that an importer brings goods into the United States at his peril, that it may be found that he has been "dumping"; and that that decision will follow the importation. All decisions in that sense are retroactive; but the constitutive factors on which the duty is reckoned are expressly referred to the time of exportation. That the importer may not know whether the Secretary will discover them, or choose to act upon them is nothing; he obviously takes his chances.

It makes little difference whether with the judge we say that the importers had an adequate remedy at law and so may not come into equity; or whether we dispose of their claims on the merits, holding that the statute is valid. On the whole, it seems to us best, with a renewed caution against any implication that some judicial review is ever necessary in customs controversies to adopt the second course and to affirm the decree upon the merits.

Decree affirmed.