UNITED STATES *v.* G. W. SHELDON & CO. (RENAUD & CO.) (No. 3900)[1]

United States Court of Customs and Patent Appeals, January 6, 1935

*Joseph R. Jackson,* Assistant Attorney General (*John F. Kavanagh,* special attorney, of counsel), for the United States.

*James W. Bevans* for appellee.

[1] T. D. 48108.

## 246

[Oral argument December 5, 1935, by Mr. Kavanagh and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported at the port of New York certain alcoholic perfumery, and made five entries thereof on dates from October 21, 1930, to November 26, 1930, inclusive. These goods were appraised, in each instance, by the local appraiser at their United States value. These perfumeries bore the following grade names: Aveig, Aqama, Ajoli, and Apoun. The importer appealed to reappraisement.

The trial court found no foreign or export value to be shown by the record, and found a United States value on all the imported goods of "$0.0174 per ¼-ounce package, $0.0087 per ⅛-ounce package, and $0.0696 per 30-gram or 1-ounce package." On review, the Third Appellate Division of the United States Customs Court reversed the judgment of the trial court, and remanded the cause with directions to dismiss the appeals insofar as they related to the Apoun and Ajoli brands, and to make findings of United States value as to the Aqama and Aveig brands as follows: For the Aqama brand, $0.048 cents per bottle of ¼-ounce, and for the Aveig brand, $0.0497 cents per bottle of ⅛-ounce. The decision of the trial court as to foreign and export values was approved.

The Government has appealed from the judgment as to the Aqama and Aveig brands. No cross appeal has been taken by the importer. We are, therefore, here concerned only with the appraisement of the Aqama and Aveig brands at their alleged United States value. No question of foreign or export values is before us, and it is conceded by both parties that the merchandise is dutiable at its United States value, as provided by section 402 (e) of the Tariff Act of 1930.

At the times of importation, entries were made in regular form and estimated duties were paid. Afterwards, but before the invoice and the merchandise had come under the personal observation of the appraiser for the purpose of appraisal, the importer sought to amend its entries to make market values, by adding 52.35 per centum to the original entered value. The entry 788,771, with its accompanying papers, is typical of the proceedings as to these proposed amendments. It appears from these papers that at the time it was proposed to amend this entry, the importer was without financial means to pay the estimated increased duties. It, therefore, requested from the collector at the port of New York the privilege of making these amendments without an immediate payment of the increased estimated duties. The acting assistant collector at the port communicated by letter with the Commissioner of Customs, and requested permission to enter into such agreement for deferred payment, which request was refused. So far as the record discloses, nothing further was done as to the

amendments, and the increased estimated duties have never been deposited.

This somewhat unusual set of circumstances has led to the following situation and contentions: The Government claims that for dutiable purposes the amendments must be considered as voluntary, and that in the ascertainment of dutiable value, the entered values, as shown by the amendments, being higher than the United States values, as fixed by the appraisement, must be taken, by virtue of the provisions of section 503 (a) of the Tariff Act of 1930:

(a) GENERAL RULE.—Except as provided in section 562 of this Act (relating to withdrawal from manipulating warehouses) and in subdivision (b) of this section, the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the entered value or the final appraised value, whichever is higher.

Coupled with this claim is another and somewhat inconsistent one that, inasmuch as the importer has not paid the estimated additional duties, it has not placed itself in position where it may appeal to reappraisement, because of the language of section 501 of said Tariff Act of 1930:

SEC. 501. NOTICE OF APPRAISEMENT—REAPPRAISEMENT.

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value. The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or.his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise. * * *

The appellate division held and the appellee contends that, there being no payment of the estimated additional duties, there were, in fact, no amended entries, and that the matter must be considered as if there had been no attempted amendments.

We believe the appellate division was not in error in coming to this conclusion. The practice in the entering of goods at a port of the United States, a practice well known to importer and to Government officials, is for the importer to deposit the amount of his estimated duties with the collector at the time of entry. It has long been so provided by regulations of the Treasury Department, which have the force and effect of law. The pertinent regulations at the time of these entries were articles 278 to 281, inclusive, Customs Regulations of 1923, pp. 180–181. See, also, *United States* v. *Sherman & Sons Co.*, 237 U. S. 146–152.

Certainly, no power was given to the collector by law to waive any of these regulations. As stated by the trial court, to permit a collector to allow amendments to entries to be made upon a credit basis would lead to endless abuses and frauds against the customs. The amended entry was no different in effect than an original entry, and it was not complete until a deposit had been made of the estimated duties due thereon. The case must, therefore, be considered as if the attempted amendments had not been made.

After the appraiser had advanced the entered value for purposes of appraisement, the importer was advised, and these appeals to reappraisement were filed within the legal period. As we have before noted, the Government now insists that its motion before the trial court to dismiss the appeals should have been allowed, because the appellee had not—

complied with all the provisions of this Act relating to the entry and appraisement of such merchandise,

as provided by said section 501. If the entries were not amended, as we have seen they were not, then the importer had complied with all the requirements of the law before taking its appeal to reappraisement.

The only respect in which it is claimed that the requirements of the law had not been complied with was in the nonpayment of the estimated duties at the time of the attempted amendments. We have already expressed our views on that matter. It, therefore, appears that the appeals to reappraisement were properly made, and that both the trial court and the appellate division had jurisdiction and did not err in denying the motions to dismiss the appeals, on this ground.

The remaining question is whether there is substantial evidence in the record to support the judgment of the appellate division in its ascertainment of United States value. In stating the case, the appellate division stated:

The prices used by the appraiser as a basis for determining the United States value of the imported merchandise were obtained from the importing firm in the form of an affidavit wherein the prices were given at which the merchandise imported at the port of New York was sold. The evidence establishes that although the major portion of the merchandise imported by the firm of Renaud & Co. had been entered at the port of Boston, during the year 1930, eleven entries were made at the port of New York, and one entry in March 1931. The affidavit purports to cover sales of the merchandise in the twelve entries, five of which are covered by the reappraisement herein. It is apparent that the appraiser, in using as a basis of value the prices at which the identical imported merchandise was sold, proceeded contrary to law, as it is clearly set forth in section 402, Tariff Act of 1930, that—

The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale  *  *  *  in the principal market of the United States to all purchasers, *at the time of exportation of the imported merchandise,*  *  *  *  (Emphasis ours.)

The statute clearly indicates that the selling price of merchandise used as a basis for finding United States value is that of merchandise previously imported

rather than the selling price of merchandise upon which the United States value is to be determined. Therefore it is clear that the United States value of the merchandise, as determined by the appraiser, is without warrant of law.

The record discloses that the principal market for this class of perfumery is Boston; that at the time of exportation, merchandise identical in character and description was sold outright in Boston, but at a loss; that Aqama brand was sold at 11 cents per ¼-ounce bottle and Aveig brand was sold at 11 cents an ⅛-ounce bottle; that Apoun brand, after importation, is taken from the imported containers and placed in high-priced hand-tooled leather jewel cases, and that the selling price thereof, including the container, does not reflect the selling price of the perfumery; and that there had been no previous importations of Ajoli brand, consequently no selling price in the United States is applicable. It is further disclosed by the record that none of the imported merchandise is purchased goods; that it is imported by Renaud & Co. to be paid for by them after it has been sold in the United States.

Thereupon we find evidence in the record to show that the prices at which Aqama and Aveig brands were freely offered for sale, packed ready for delivery, in Boston, the principal market of the United States, to all purchasers, at the time of exportation of said merchandise, in the usual wholesale quantities and in the ordinary course of trade was: For Aqama brand, 11 cents per bottle of ¼ ounce, and for Aveig brand, 11 cents per bottle of ⅛ ounce.

There is evidence in the record to show that the deductions that must be made, under section 402 (e) of the Tariff Act of 1930, for Aqama brand, are, nothing for profit, and nothing for general expenses, the goods not being purchased; for transportation, insurance, etc., $0.02; for specific duty at 40 cents a pound, based on the weight of the liquid, $0.006; and 75 per centum ad valorem duty, which is equal to $0.036. From evidence that the United States selling price is 11 cents per ¼ ounce, the United States value would equal $0.048 per ¼-ounce bottle. For the Aveig brand, being packed in ⅛-ounce bottles, following the same method of calculation, the evidence shows that the United States value would equal $0.0497 per ⅛-ounce bottle.

The conclusion of the division as to the method of ascertainment of United States value must be the correct one, under the language of section 402 (e) of said tariff act. The said value is the price at which such or similar imported merchandise is *freely offered for sale,* packed, in the principal market of the United States, to all purchasers, *at the time of exportation* of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale at the time of export of the goods being valued.

As to the United States value found by the appellate division, there is substantial evidence in the record in support thereof. For instance, the witness John H. Davis, of Renaud & Co., the importer, testified that during the time when the merchandise here involved was being exported, similar merchandise, previously imported at Boston and New York, was being freely offered for sale and sold at 11 cents per package. The witness explained this by saying that their consignments were made at 65 cents per package, but that they were only able to sell it at 11 cents per package—this included the brands Aqama and Aveig, involved here, ¼-ounce and ⅛-ounce bottles, respectively.

The other items of allowances for duty, cost of transportation, and insurance, and other necessary expenses from the place of shipment to the place of delivery, are also shown by the testimony of the witness Davis, as found by the appellate division. No commission or profits are shown by the record, as the division properly held, and, hence, none were allowed.

We find no error in the judgment of the Third Division of the Customs Court, and it is *affirmed*.