## COTTMAN CO. et al. v. DAILEY.
### No. 2476.

District Court, D. Maryland.
July 19, 1937.

Marbury, Gosnell & Williams, Wm. L. Marbury, Jr., and Roszel C. Thomsen, all of Baltimore, Md., and J. Stuart Tompkins, of New York City, for complainants.

Joseph R. Jackson, Asst. Atty. Gen., Daniel I. Auster, Sp. Atty., of New York City, and Bernard J. Flynn, U. S. Atty., and C. Ross McKenrick, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The subject-matter of this suit relates to the administration of the customs laws of the United States, and arises particularly under the Act of May 27, 1921, c. 14, § 201–212, 406, 407, 42 Stat. 11, known as the "Antidumping Statute." (U.S.C.A. title 19, §§ 160 to 173.) The principal object of the suit is to enjoin the defendant Collector of Customs from liquidating an entry at the Port of Baltimore of certain merchandise, and assessing thereon a special customs duty under that statute. A motion has been made to dismiss the bill of complaint which sets out the following situation, in substance.

The plaintiffs in 1927 and 1928 imported at the Port of Baltimore several cargoes of phosphate rock from Morocco. That merchandise was under the then applicable Tariff Act of 1922 generally free of duty but, acting under the authority of the Antidumping Act, the Secretary of the Treasury made the finding and announcement that "dumping" was likely to occur with respect to this commodity (U.S.C.A. title 19, § 160); and thereupon the local appraiser attached to the Collector's office appraised the goods on the basis of their "foreign market value," at a sum substantially higher than the purchase price paid by the importers. It is provided by the statute that in such an event a special duty must be paid "in an amount equal to such difference" (U.S.C.A. title 19, § 161). The total amount here involved on that basis is said to be approximately $60,000. The plaintiffs took exception to the determination of the foreign market value as so fixed by the appraiser (ex parte and without hearing), and exercised their right of an "appeal for reappraisement," authorized by the statute. (U.S.C.A. title 19, § 169). Such an appeal by the customary procedure goes to the United States Customs Court which, before 1926 (Act May 28, 1926, § 1, 44 Stat. 669), was known as the Board of General Appraisers, where there is a trial de novo, and by the statute then in force it was made the duty of that court to "ascertain and return the value of the merchandise." (U.S.C.A. title 19, § 381).

Thereupon there began a very long litigation in the Customs Court and the Court of Customs and Patent Appeals, which included three separate consecutive appeals from the trial judge in the Customs Court to the 3rd Appellate Division, consisting of three judges of said court, with three further appeals to the Court of Customs and Patent Appeals. The opinions of the latter court are reported in U. S. v. Cottmann & Co., 18 C.C.P.A. (Customs) 132, Cottman & Co. v. U. S., 20 C.C.P.A. (Customs) 344, and U. S. v. Cottman & Co., 23 C.C.P.A. (Customs) 378; Id. (1936) 69 Treas. Dec. p. 779, No. 48292. During the course of the litigation the Supreme Court has twice refused certiorari as to judgments of the Court of Customs and Patent

Appeals. Cottman & Co. v. United States, 289 U.S. 750, 53 S.Ct. 695, 77 L.Ed. 1495, and Id., 299 U.S. 566, 57 S.Ct. 27, 81 L.Ed. 416. The final result was that the appeals for reappraisement were dismissed without determination of value by the Customs Court, with the effect (as contended by defendant's counsel) of reinstating the figure for foreign market value fixed by the appraiser.

In accordance with the usual customs procedure the next administrative step to be taken will be the so-called liquidation of the entry by the Collector of the Port. This is said to be a merely mathematical computation of the amount of the duty based on the difference between the purchase price and the foreign market value as found by the appraiser; and in effect is an assessment of duties on that basis. The object of the plaintiffs' bill in equity in this case is to obtain an injunction against the act of liquidation (or assessment) by the Collector. It is to be further noted however, that the act of liquidation by the Collector is not final because the customs administrative law further provides that the importer, after liquidation, may pay the assessed duites under protest and further litigate the legality of the assessment by proceedings before the Customs Court, with further appeal if necessary or desired to the Court of Customs and Patent Appeals (U.C.S.A. title 19, §§ 398, 399). But the plaintiffs say that after the act of liquidation in this case they will be seriously embarrassed and prejudiced in their further opposition to the threatened assessment because payment of the duty by the Cottman estate would render it insolvent, and in addition thereto, they fear that the liquidation of itself will have such characteristics of finality with respect to the most important feature of the whole controversy, that their defenses thereafter will be seriously impaired.

The principal complaint alleged in the bill in this case is that the litigation in the Customs Courts has erroneously resulted in the dismissal of the appeal for reappraisement, when the result should have been the setting aside of the appraiser's valuation and the determination by the Customs Court that the Antidumping Act was not applicable to the importation, because the proof showed that there was no foreign market value, and no possibility of showing the "cost of production" as an alternative, within the provisions of the statute. How the result of the litigation was reached will appear from the reported opinions of the several judges of the Court of Customs and Patent Appeals, and is also recited in the bill of complaint. The plaintiffs contend that it appears from the opinions of the Court that the proof in the Customs Court showed there was and could be no foreign market value because the exporter was a government monopoly and there were no free sales, and also that it was impossible to show the necessary elements under the Antidumping statute of cost of production as an alternative to market value. And it is said that as the appeal was from the appraiser's finding of a market value, which could not have existed, and as the appraiser did not base his valuation on cost of production, and as the statute required the Customs Court to determine the value *de novo*, it was erroneous to dismiss the appeal with the effect of validating an appraisal of foreign market value which the court had found to be without justification. The legal proposition that the plaintiffs deduce from this contention is that they have exhausted their administrative remedies without avail, and have no other or further adequate remedy at law, and therefore invoke the aid of this court of equity in defense of a threatened invalid customs assessment, and in protection of their legal property rights, as a case arising under the Constitution and laws of the United States, jurisdiction of which they say is given by the United States Code, title 28 § 41(1), 28 U.S.C.A. § 41(1). Some color is given to the alleged hardship of the plaintiffs' case, as outlined in the bill of complaint, by the admission made by counsel for the defendant that the appraisal as determined by the appraiser was erroneous, though it is claimed that it was not void. [See Rosenthal Co. v. United States, 24 F.(2d) 351 (C.C.A.2).]

The prayers of the bill, in addition to (1) the request for an injunction against liquidation of the entry by the Collector, are also for rulings that (2) the Antidumping statute is unconstitutional; (3) that the Secretary of the Treasury was not warranted by the statute in his proclamation or finding that "dumping" of phosphate rock was likely to occur; (4) that the appraisal herein referred to was not justifiable, and is void, and no dumping duties can lawfully be assessed on the basis thereof; or in the alternative, (5) that the Collector be directed to liquidate the entries upon the basis of the original entered values, without levying or assessing any dumping duties.

Upon filing of the suit and after notice to the United States Attorney as counsel for the defendant Collector, a restraining order was issued without contest at the time because the subject-matter being of an unusual nature, the parties desired time to study the case before a hearing. Thereafter, as soon as requested, the court assigned the case for argument upon the defendant's subsequently interposed motion to dissolve the restraining order and to dismiss the bill for lack of jurisdiction and for want of equity on the facts stated. The case having been fully orally argued and extended briefs filed by both parties, it has now been studied, and I have reached the conclusion that the bill must be dismissed for want of jurisdiction in this court. As the motion to dismiss admits the facts stated in the bill, they must be taken as the finding of facts required by general Equity Rule 70½, 28 U.S.C.A. following section 723, and it seems unnecessary to fully repeat them here. But as the case must be dismissed for want of jurisdiction, I have briefly outlined such of the facts stated in the bill as have special relation to the question of jurisdiction, sufficiently to explain by the subsequent discussion the grounds for the conclusion reached.

Assuming that the plaintiffs' case, as stated in the bill of complaint, presents a case of seeming hardship, it is nevertheless obvious that this court cannot interfere in the existing situation if it does not have jurisdiction of the subject matter. And a reference to the applicable federal statutes will show that the jurisdiction does not exist in this case. It would probably be too broad a statement that the district court has no jurisdiction at all under any circumstances in matters arising in the administration of the customs laws. If the Secretary of the Treasury or any of his assistants or subordinates undertakes to act to the prejudice of the constitutional rights of citizens, beyond the powers granted to him by the federal statutes, no doubt his actions can be enjoined by the district court of appropriate venue jurisdiction. Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L. Ed. 892. And there are other situations, not covered by the Customs Administration Act, where the Circuit or District Courts have properly intervened. In re Fassett, 142 U.S. 479, 12 S.Ct. 295, 35 L.Ed. 1087; DeLima v. Bidwell, 182 U.S. 1, 176, 21 S.Ct. 743, 45 L.Ed. 1041; Downes v. Bidwell, 182 U.S. 244, 248, 21 S.Ct. 770, 45

L.Ed. 1088. But it is not apparent that the Secretary was acting in this matter beyond the limits of his authority conferred by the statute. Kreutz v. Durning, Collector, 69 F.(2d) 802 (C.C.A.2).

And possibly it may be assumed, without deciding, that if the Antidumping Act involved in this case were clearly unconstitutional, relief might be afforded to the plaintiffs on the general jurisdictional ground conferred on the district court by the United States Code, title 28, § 41(1), 28 U.S.C.A. § 41(1), if the case had not already been adjudicated. It is, however, undesirable to determine the important question of the constitutionality of an act of Congress where general jurisdiction of the subject matter is doubtful, or where it is not absolutely necessary for the determination of the particular case. The plaintiffs' bill does in terms raise the question of the constitutionality of the Antidumping Act but it is evident from the contents of the bill as a whole and from the argument of counsel for the plaintiffs orally and by brief, that the gravamen of their complaint is not so much against the validity of the act as a whole but by reason of the application which has been given it in the litigation above referred to. In addition it may be observed the constitutionality of the Antidumping Act when properly raised can be and has been passed upon by the Board of Customs and Patent Appeals in favor of the validity of the Act. Tower & Sons v. United States, 71 F.(2d) 438, 21 C.C.P. A. (Customs) 417; Kleberg & Co. v. United States, 71 F.(2d) 332, 21 C.C.P.A. (Customs) 110. And the statute has also been held valid by the Circuit Court of Appeals for the Second Circuit in Kreutz v. Durning, Collector, 69 F.(2d) 802. The Supreme Court has jurisdiction by certiorari to review judgments of the Court of Customs and Patent Appeals involving constitutional (and other) questions when properly presented. (U.S.C.A. title 28, § 308). Board of Trustees of University of Illinois v. United States, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 1025. In this case it has already been noted that the Supreme Court has twice declined to grant certiorari.

It is unnecessary to consider in this case to what extent, if any, importers of merchandise are entitled to a judicial review in the assessment and collection of customs duties (see Kreutz v. Durning, Collector, supra, 69 F.(2d) 802, at page 804), because Congress has always provided such

review in some form. Prior to June 10, 1890 (when the Board of General Appraisers was established) suits might be brought in the United States Circuit Courts against the Collector to recover alleged excess duties. De Lima v. Bidwell, 182 U.S. 1, 174, 21 S.Ct. 743, 45 L.Ed. 1041; Downes v. Bidwell, 182 U.S. 244, 248, 21 S.Ct. 770, 45 L.Ed. 1088; Hartranft v. Langfeld (1888) 125 U.S. 128, 8 S.Ct. 732, 31 L.Ed. 672. After the creation of the Board, appeals from the action of the Collector were determined by it, but with provision for further appeal to the Circuit Court and from there to the Supreme Court; or, after 1891, to the Circuit Court of Appeals, subject to review by the Supreme Court on certiorari. But in 1909, to provide more speedy determination of customs cases, Congress created the Court of Customs Appeals (now the Court of Customs and Patent Appeals). See Hughes Federal Practice, Vol. V, s. 2853; Stegeman v. United States, 1 Cust. App. 208; United States v. Sherman & Sons Co., 237 U.S. 146, 35 S.Ct. 520, 59 L. Ed. 883. The act constituting the Court of Customs and Patent Appeals (U.S.C.A. title 28 § 308) provides that:

"The Court of Customs and Patent Appeals shall exercise *exclusive* appellate jurisdiction to review by appeal, as herein provided, final decisions by the United States Customs Court in all cases as to the construction of the law and the facts respecting the classification of merchandise and the rate of duty imposed thereon under such classifications, and the fees and charges connected therewith, and all appealable questions as to the jurisdiction of said court, and all appealable questions as to the laws and regulations governing the collection of the customs revenues; and the judgments and decrees of said Court of Customs and Patent Appeals shall be final in all such cases." (Italics supplied.)

And by section 309, it is further provided: "No appeal shall be taken or allowed from any Board of the United States General Appraisers to any court other than the Court of Customs Appeals, and no appellate jurisdiction shall be exercised or allowed by any other courts in cases decided by said Board of United States General Appraisers; but all appeals allowed by law from such Board of General Appraisers shall be subject to review only in the Court of Customs Appeals, according to the provisions of this chapter."

And it is also to be noted that section 41(5) of title 28 (Rev.St. § 563, par. 5, Rev.St. § 629, par. 4, as amended March 3, 1911, c. 231, § 24, par. 5, 36 Stat. 1092), which is the general statute conferring jurisdiction upon the district court, grants jurisdiction—"of all cases arising under any law providing for internal revenue, or from revenue from imports or tonnage, *except those cases arising under any law providing revenue from imports, jurisdiction of which has been conferred upon the Court of Customs Appeals.*" (Italics supplied.)

And it has recently been held in the Ninth Circuit, in view of these statutory provisions, that the district court has no jurisdiction in suits against the United States to recover customs duties alleged to have been illegally exacted under an unconstitutional statute, as the jurisdiction in such cases has been conferred upon the Customs Courts exclusively. Riccomini v. United States, 69 F.(2d) 480 (C.C.A.9). And counsel for the plaintiffs have not been able to cite any case at all similar to the present in support of the jurisdiction here for which they contend.

The closest precedent for the instant case is Kreutz v. Elting (D.C.) 3 F.Supp. 364, on appeal, Kreutz v. Durning, 69 F. (2d) 802 (C.C.A.2), where an unsuccessful effort was made to enjoin the Collector and the Appraiser from proceeding under the Antidumping Act, before an appraisal had been made, on the ground of the alleged invalidity of the action of the Secretary, and the alleged unconstitutionality of the statute. The plaintiffs' bill in equity was dismissed on motion by the district court on the ground that there was an adequate remedy at law in the Customs Court and the Court of Customs and Patent Appeals; and the decree was affirmed, the appellate court also holding the statute valid. That case differs from this only in the fact that here the injunction is sought after long litigation in the Customs Court, which has resulted adversely to the plaintiffs. But it is of course clear that lack of success in the actual outcome of the case does not establish the lack of an adequate remedy at law which is necessary for equity jurisdiction.

Nor do plaintiffs' counsel in terms so argue. Their position as stated in their brief is "that the appraisals have been adjudicated to be erroneous, * * * that

the Government is seeking to take advantage of a *procedural defect* in the customs administrative law to exact from them a duty, etc." Restating this in more definite legal form apposite to the case, the contention would seem to be that the Collector here is not validly authorized to liquidate the entry, because the importers have appealed to reappraisement, which under the customs administration regulations, stays the act of liquidation, until the Customs Court has ascertained and returned the value, and that this has in fact not yet been done in this case because the appeal to reappraisement has been *dismissed* (although testimony on values was submitted by both parties), when the court should have determined the value *de novo*. That is to say, the plaintiffs' position, here and now, would seem to be that the affirmative determination of the "foreign market value" (or cost of production) or, if the evidence failed to show this, then an affirmative ruling as to the correctness of the appraisal appealed from, by the Customs Court is a *condition precedent* to the liquidation by the Collector, and that a dismissal of the appeal without determination of value by the Customs Court (where testimony has been submitted by both parties) and without an affirmative determination whether the appraiser's appraisal of foreign market value was valid or void, (especially where the court determines that the proof for both parties fails to show there was a foreign market value) but with the effect nevertheless of reinstating the appraisal based specifically on foreign market value, is not in accordance with the applicable statute (U. S.C.A. title 19, § 381) and does not now authorize the Collector to proceed to liquidation, despite the final judgment of the Court of Customs and Patent Appeals.

In this connection it may also be noted that under the administrative statutes then applicable (prior to the Tariff Act of 1930) there was no presumption—as there is now (title 19 U.S.C.A. § 1501)—of the correctness of the appraisal. United States v. Malhame & Co., 19 C.C.P.A. (Customs) 164; Meadows, Wye & Co. v. United States, 17 C.C.P.A. (Customs) 36. As to the effect of an appeal for reappraisement pending decision by the Customs Court, and upon dismissal of the appeal, see Carey & Skinner v. United States, 16 Cust. App. 382, 391; United States v. Vandegrift & Co., 16 Cust.App. 398, 404.

In the latter case the court said:

"It is true that after such appeal is prayed and some substantial evidence is before the reappraising justice, further consideration of the appraisement made by the local appraiser is eliminated. Until that happens, however, this appraisement is simply suspended and subject to reinstatement upon the dismissal of the appeal by the reappraising justice."

United States v. Woolworth Co., 22 C.C.P.A. (Customs) 184, seems to be the most fully considered case in the Court of Customs and Patent Appeals discussing the proper procedure in the Customs Court in reappraisement cases. It is there clearly stated that it is the duty of the trial judge under the statute to determine value, where possible "and it is his decision which becomes the basis of all subsequent proceedings"; and it is also within the power of the appellate division to—

"find the dutiable value, and that it is its duty so to do in all cases where the appraiser had the power to appraise the merchandise at the time the appraisement was made. If it regards the value found by the single judge as both legally and factually correct, it should affirm such value. If not regarded as correct, it should find what is the value, or, if the record be insufficient, in its opinion, to enable such finding, the case should be remanded to the single judge with directions to dismiss the appeal to reappraisement or for a new trial, as the division may determine. We think that no case, in which appraisement is required and in which the elements are present that enable appraisement, should be left suspended in mid-air to the detriment, if not the complete paralysis, of administration. Accordingly we feel that in cases where the tribunals of the United States Customs Court, when functioning in reappraisement proceedings, find erroneous the valuation of the local appraiser, they should themselves find value if the record warrants such a finding. Their authority is ample, and, in our opinion, the duty so to do is mandatory. Unless it is done by them it cannot be done. This court is without the power which is theirs, and we know of no other tribunal to which those interested may turn. * * *

"Also it may happen that elements essential to a legal appraisement may be lacking. Under such circumstances, where the appraisement of the local ap-

praiser is found to be invalid, the tribunals of the Customs Court, of course, are unable to find value, and an anomalous situation is unavoidably created. Illustrative of such a situation is the case of United States v. V. M. Davis, Sinai Kosher Sausage Factory, 20 C.C.P.A. (Customs) .305, T. D. 46087. In that case this court affirmed the judgment of the Second Division of the United States Customs Court, which had affirmed the decision of the single judge holding that the appraisements of the local appraiser were null and void."

Plaintiffs' objection to the liquidation of the entry on the basis of the appraiser's figure for foreign market value involves another question, and one of possible large importance in subsequent customs administrative procedure in this case. Did the dismissal of the appeal, in view of the course of the litigation in the Customs Courts, have the effect of reinstating the appraisal for the purposes of liquidation by the Collector? This question has not been greatly elaborated by counsel for either party probably because there is no very direct issue between the parties on that question as the case is now presented to this court. The plaintiffs' dilemma as outlined in their bill of complaint is apparently based on the assumption that the question will be answered in the affirmative. If the question is answered in the negative, it would seem they would have no need for the relief they are seeking in this case. On the other hand, counsel for the defendant, while admitting that the appraisal was erroneous, contend that it was not void, from which the implication would seem to be that it should be treated as valid. The situation as thus presented on the defendant's contention would seem to be somewhat anomalous in the customs law.

The primary object of the appeal for reappraisement authorized by the customs law is to determine whether the appraisal was correct. It seems to be conceded that the course of the litigation in the Customs Courts has shown that the appraisal was erroneous. The final order in the case as a result of the long litigation was a mere dismissal of the appeal. It appears that the practice in the Customs Court, on reappraisement appeals, has at times been to dismiss an appeal for the reason that the appraisement is erroneous or null and void, although this practice seems to have been disapproved by the Court of Customs and Patent Appeals in the most fully considered

case upon the subject, United States v. Woolworth Co., 22 C.C.P.A. (Customs) 184. It is noted that the final judgment of the trial court in this case, on the third appeal, which was ultimately affirmed by the Court of Customs and Patent Appeals, 23 C.C.P.A. (Customs) 378, supra, did not expressly determine whether the appraisement appealed from was valid or not. The order of simple dismissal was entered by the trial judge after counsel for the importers had requested an order of dismissal on the ground that the appraisal was void, and after counsel for the Government had filed a motion that the appeal be dismissed and the appraisal be approved. But the trial judge granted neither motion and merely entered a dismissal in accordance with his interpretation of the prior appellate orders.

Although the final judgment of the Court of Customs and Patent Appeals was that the appeal should be dismissed, the course of the litigation shows a very great diversity of judicial opinion leading up to the final result. A review of the whole course of litigation in detail would extend this opinion to an unreasonable length. But as bearing on the question whether appraisal was correct or erroneous, the course of the litigation may be briefly summarized as follows: On the first trial the single judge found the appraisal erroneous because he found the foreign market value was *less* than the purchase price. This finding was affirmed by the Appellate Division of the Customs Court; but reversed on appeal to the Court of Customs and Patent Appeals for the exclusion of certain documentary evidence. On the second trial, the single judge, on what seems to have been largely the same evidence, again found the foreign market value less than the purchase price. On the second appeal to the Appellate Division, there were three separate opinions by the three judges. The opinion of one judge was an affirmance on the merits; another opinion was to the effect that there was no evidence to support the figure found by the appraiser for foreign market value; that as a matter of law the affirmative evidence in the case on both sides did not show foreign market value within the definition of the Antidumping Act because sales were controlled and not free; and that the case should be remanded for further proceedings in order to permit the Government to introduce further evidence to establish if possible the cost of production as an alternative to foreign

market value; and the third opinion was to the effect that neither foreign market value nor cost of production were established by the evidence, and it was said for that reason the appeal might well have been dismissed. The order entered was a remand for further proceedings in accordance with the decisions. On appeal to the Court of Customs and Patent Appeals, this judgment was affirmed by a majority of the court of five judges. Presiding Judge Graham, writing the opinion for the court, held that the evidence in the case offered by both parties had failed to establish either foreign market value or cost of production within the statutory definitions. Judge Lenroot concurred except as to that portion of the opinion dealing with the proper method of determination of the cost of production. Judge Garrett dissented on the merits holding that the judgment should be for the importer. On the third trial the single judge of the Customs Court entered the simple order of dismissal as above mentioned. But on the third appeal to the Appellate Division of the Customs Court the three judges unanimously reversed on the ground that the original appraisal was void as a matter of law. On the third appeal to the Court of Customs and Patent Appeals, this order was reversed and the order of the trial judge "dismissing the appeals to reappraisement" affirmed. Of the five judges, two based their reasons for reversal on the procedural ground that the judgment of the court on the second appeal was final in ordering a dismissal and did not permit any re-consideration of the merits of the case by the Appellate Division; and two judges gave as their reasons for reversal that the cost of production was not established by the evidence and that the burden of proof on the appeals to reappraisement was on the importers to show not only incorrectness of the appraisal based on foreign market value but also to affirmatively show the cost of production. The opinion by Judge Lenroot stated the view that the reversal should not have been placed on procedural grounds but on the merits which, it was said, the former opinion by Presiding Judge Graham did not do. The fifth judge dissented on the merits and held dumping was not established.

From this condensed summary of the course of the litigation it appears that at no time in any of the courts, trial or appellate, was any one of the judges of the opinion that foreign market value as found by the appraiser was correct. And on the contrary it seems to have been the case that all the judges, both trial and appellate, were of the opinion the foreign market value as found by the appraiser was erroneous. In this situation it would appear that the question is presented whether the effect of the final mere dismissal of the appeals has the legal effect of reinstating as valid the original appraisal as a basis for the liquidation of the entry and the assessment of the special Antidumping and customs duty at the rate of the difference between the foreign market value as found by the appraiser, and the purchase price as paid by the importer.

It is, however, unnecessary in the present case now before this court to express any opinion on the plaintiffs' contentions with respect to the final legal effect of the litigation in the Court of Customs and the Court of Customs and Patent Appeals because, even if it could be held as a matter of law that the Collector is not now authorized to liquidate the entry on the basis of the original appraisal, it nevertheless does not in my opinion follow that this apparently unusual situation would confer jurisdiction on this court to enjoin the liquidation. Such jurisdiction in the district court does not exist in the ordinary administration of the customs law but only in such cases as are illustrated by In re Fassett, and DeLima v. Bidwell, supra, where the question was whether the articles proposed to be assessed for customs duties were in fact "imported" at all and was therefore outside of the ordinary customs administrative laws which deal with duties on admittedly imported merchandise. The plaintiffs' contention for jurisdiction here is based on an alleged inadequacy of the procedural law which Congress has provided for appeals to reappraisement. Such inadequacy, if any, as here exists, does not constitute an omission or defect in the legal procedure provided but if anything is merely an uncertainty arising in the administration of the applicable procedural law. The questions which have been above noted are in subject matter such as properly arise in the ordinary administration of the customs laws, jurisdiction over which is committed by the federal statutes to the Customs Court and the Court of Customs and Patent Appeals. And, as heretofore indicated, even if the Collector now proceeds to liquidate on the basis of the original appraisal, his original

decision in that respect if objectionable to the plaintiffs will not be final because it can be hereafter questioned by protest and appeal to the Customs Court and the Court of Customs Appeals. These courts have exclusive jurisdiction to deal with such matters, and if the questions above mentioned are properly presented by the plaintiffs to these tribunals they will, of course, receive appropriate consideration there.

Finally it may be said that the case now presented to the court has been heretofore extensively litigated in the special courts provided by Congress for this type of customs controversies, which had complete and valid jurisdiction over the subject matter, including power to pass on constitutional questions. See Kreutz v. Durning, Collector (C.C.A.) 69 F.(2d) 802. All the objections now raised to the effect of the result of that long litigation have been already or can be hereafter presented to the Court of Customs and Patent Appeals, and by the federal statutes its final judgments are made conclusive and not appealable to any other federal court, except to the Supreme Court on certiorari. The plaintiffs' bill in equity in this case is in effect an effort to appeal from a supposedly adverse result in the Court of Customs and Patent Appeals, which is expressly forbidden by the statute.

The conclusion of law seems clear that this court is without jurisdiction of the subject matter, and, on the defendant's motion, the restraining order must be vacated and the bill of complaint dismissed, with court costs taxable against the plaintiffs. Orders may be submitted to that effect in due course.