(C.D. 2554)

## The A. W. Fenton Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided July 6, 1965)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Andrew P. Vance* and *Harvey A. Isaacs,* trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case consists of rubber footwear, assessed with duty under paragraph 1537 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865 and T.D. 53877, at 12½ per centum ad valorem on the American selling price, T.D. 46158. It is claimed that the footwear is not of a kind specified in Presidential proclamation, T.D. 46158; that the proclamation is unconstitutional, illegal, null, and void; that the liquidation was premature and is illegal, null, and void; and that the plaintiff has been deprived of its rights without due process of law.

When this case was called at Cleveland, Ohio, on May 12, 1964, counsel for the Government moved to dismiss the protest on the ground that duties due and owing upon the entries had not been paid. It was conceded by counsel for the plaintiff that such duties had not been paid; that some of the entries were consumption entries; and that the merchandise covered by warehouse entries had been withdrawn for consumption prior to liquidation.

Plaintiff opposes the motion on two grounds: (1) that the liquidation of June 17, 1963, was illegal because a reappraisement proceeding was pending, and (2) that there is no requirement that duties on warehouse entries be paid in order to perfect a protest as to them.

The first position urged by plaintiff is untenable. The merchandise in this case was entered by The A. W. Fenton Co., Inc., as importer of record for the account of Sharwell Brothers Co., Sharwell Brothers Shoe Co., or Sharyama, Inc. It was appraised on various dates in 1962 and notices of appraisement were sent to The A. W. Fenton Co., Inc. That firm filed timely appeals. The cases were called at a term of court in Cleveland on November 15, 1962, at which time there was no appearance on the part of the plaintiff, and counsel for the Government moved to dismiss on the ground of lack of prosecution. The cases were dismissed by order of this court, dated February 18, 1963. On August 15, 1963 (178 days later), a notice of appearance was filed by Allerton deC. Tompkins, Esquire, and he moved for a rehearing alleging that it had been understood that an arrangement for a continuance had been made and that the matter had escaped the attention of the brokerage firm until after the expiration of the 30-day period. This motion was denied on December 16, 1964. *The A. W. Fenton Co., Inc.* v. *United States*, 53 Cust. Ct. 519, Reap. Dec. 10871. There followed an application for review, and plaintiff attempted to support its case by citing *S. Stern & Company* v. *United States*, 51 CCPA 15, C.A.D. 830, claiming that it was deprived of due process of law by the dismissal of the case, since it was an agent of the party in interest and was not permitted to appear personally to answer the calendar call. The second division dismissed the application for review on the ground of lack of jurisdiction on March 19, 1965. *The A. W. Fenton Co., Inc.* v. *United States*, 54 Cust. Ct. 781, A.R.D. 184, appeal 5208 pending.

An examination of the affidavit in support of the motion for a rehearing discloses that so far as it makes any difference, both plaintiff and its principals had knowledge of the proceedings at all times, knew that counsel were necessary, and could have employed counsel to protect their respective interests. In any event, the law is clear that a motion for a rehearing must be filed within 30 days after judgment and that the court lacks jurisdiction to restore a case to the calendar on a motion made after the expiration of that period. *United States* v. *Williams, Clarke Company,* 52 Cust. Ct. 639, A.R.D. 173.

The appraisement of this merchandise thus became final and conclusive 30 days after the date of the dismissal of the appeals on February 18, 1963. The liquidation on June 17, 1963, was not premature or illegal. Subsequent proceedings in the reappraisement cases were mere nullities.

The second point involved here is the application of that part of section 515 of the Tariff Act of 1930, which provides:

\* \* \* If the collector shall, upon such review [of the protest], affirm his original decision, or if a protest shall be filed against his modification of any decision, and, *in the case of merchandise entered for consumption, if all duties and charges shall be paid,* then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law. \* \* \* [Emphasis supplied.]

Eleven of the entries under protest are warehouse entries and eight are consumption entries. Plaintiff apparently concedes that the consumption entries are subject to dismissal for nonpayment of the increased duties, but it is claimed that the statute does not require payment of such duties where the merchandise, the subject of protest, was entered for warehouse. Defendant's position is that the words "merchandise entered for consumption" include merchandise which at the time of the collector's action has been withdrawn from warehouse for consumption and has entered the commerce of the country. In the instant case, the merchandise was withdrawn for consumption before liquidation; therefore, it is claimed that since the increased duties have not been paid, the protest is subject to dismissal.

Plaintiff relies on *Importers Sales Agents (J. L. Westland & Son) and Importers Sales Agent (John L. Westland & Son, Inc.)* v. *United States,* 30 Cust. Ct. 378, Abstract 57153. That case involved a warehouse entry covering 100 cases of merchandise. Forty-seven cases had been withdrawn from warehouse for consumption and 53 remained in warehouse. Increased duties had not been paid. The court denied a motion for dismissal of the protest because of nonpayment of duties, stating (p. 379):

Counsel for the importers contends that the payment of duties is not a condition precedent to the filing of a valid protest under the circumstances of the instant case in which a warehouse entry and not an entry for consumption was made. It is contended that the statute is limited to cases involving entries for consumption. It is pointed out in the brief filed on behalf of the importers, plaintiffs herein, that Congress has made a clear distinction between entries for consumption and withdrawal for consumption. When it intends to provide for both, it so indicates by the use of a phrase such as "entered or withdrawn for consumption." (Section 313(c), Tariff Act of 1930 (19 U.S.C. § 1313(c).) Likewise, in sections 311 and 313(i), when it intends to designate the operation of removing goods from warehouse and mingling them with the commerce of the country, it uses some such term as "withdrawn for domestic consumption," or "withdrawn for consumption." We consider this point well taken and find that the provision in section 515, *supra,* being limited to cases of merchandise entered for consumption, there is no provision in the statute requiring that duties and charges must be paid in cases of warehouse entries.

Defendant claims that this holding was improvident and not in conformity with congressional intent. We do not consider it sacro-

sanct under *stare decisis* because it was only an interlocutory ruling and the Government finally obtained dismissal for want of prosecution. *Importers Sales Agents et al.* v. *United States*, 35 Cust. Ct. 345, Abstract 59558. The papers reflect that the issue was briefed and some of the pertinent authorities cited, but on the Government side the brief rather fails to come to grips with the issue and perhaps, by its omissions, accounts for the decision. The rule laid down has apparently been accepted by the Bureau of Customs, since section 17.3(k) of the Customs Manual now provides:

> Whenever the collector affirms his original decision after his review of the protest, *where increased duties or charges on goods covered by a consumption entry have not been paid,* the third copy of the protest forwarded to the Assistant to the Chief Counsel pursuant to paragraph (j) of this section shall be accompanied by a notice so advising that official and recommending that he request the Assistant Attorney General to file a motion for dismissal of the protest. If such duties or charges are subsequently paid while the protest is still pending in the Customs Court, notice shall be given to the Assistant to the Chief Counsel and a receipted copy of customs Form 5107, notice of Duty and Internal Revenue Tax Due, shall be forwarded to the clerk of the court, as prescribed in section 10.60(i) of the Customs Accounting Manual. [Emphasis supplied.]

The first sentence was added by a revision of November 1960 and the second by the revision of October 1962.

Abstract 57153, *supra,* was followed, apparently without any fresh review of its reasoning, in *Fred Whitaker Company* v. *United States,* 35 Cust. Ct. 309, Abstract 59463.

In *Sucrest Corporation* v. *United States,* 31 CCPA 220, C.A.D. 275, sugar had been entered for warehouse, and the broker presented papers for its withdrawal for consumption just before the time when a higher rate of duty went into effect. He was informed that he would have to pay duty at the higher rate, and he abandoned his efforts to withdraw at that time and did not tender payment. A protest was filed against the collector's refusal to permit the withdrawal and accept appellant's entry for consumption. The court stated (p. 232):

> It is clear from a consideration of the hereinbefore referred to provisions of the Tariff Act of 1930 that the Congress contemplated that the collector should estimate the amount of duties due on imported merchandise and that the importer or consignee should deposit with the collector at the time of making entry for consumption the amount of such estimated duties as a condition precedent to his right to enter such merchandise for consumption and receive a permit of delivery therefor.
>
>    \*       \*       \*       \*       \*       \*       \*
>
> \* \* \* As hereinbefore noted, the protest does not contain a statement that the estimated duties were either tendered or paid. As payment of the collector's estimated duties is a condition precedent to the right of an importer to enter its goods for consumption and receive a delivery permit therefor, it is evident that that protest does not state a good cause of action and was, therefore, properly dismissed by the trial court. \* \* \*

This case appears inconsistent with plaintiff's position. It is true, however, that the fact situation in the instant case is different in that the estimated duties were paid at the time of withdrawal, but the increased duties assessed on liquidation have not been paid.

It has been held in cases involving consumption entries that such increased duties must be paid before the court may consider the case on its merits. *Kolynos Co.* v. *United States*, 25 Treas. Dec. 211, T.D. 33762; *Department of the Army (Cecil R. Russell, Capt. QMC)* v. *United States*, 25 Cust. Ct. 330, Abstract 54925; *Geo. B. Reading* v. *United States*, 46 Treas. Dec. 320, T.D. 40457. In the *Kolynos* case, the court stated (pp. 213–214):

> To sum up, we conclude that under subsection 14, section 28, tariff act of 1909, providing where merchandise has been entered for consumption that upon protest and payment of "the full amount of the duties and charges ascertained to be due," the collector shall transmit the papers to the Board of General Appraisers for decision, the collector should withhold the papers till such payment is made, and that in the event of premature transmission to the board the board will be without jurisdiction to decide the case until such payment shall have been made. Note United States *v.* Tiffany (151 Fed., 473; T.D. 27754). While delay in the payment of duties is not necessarily fatal to the importers' right of relief under the statute, all duties and charges in the case of entries for consumption must be paid before the board can acquire jurisdiction. Further, no officer of the Government may, by waiving payment of the full duties ascertained to be due on merchandise entered for consumption, confer jurisdiction upon the board or make it legal on the part of the board to enter upon a consideration of the merits. * * *

In *Department of the Army (Cecil R. Russell, Capt. QMC)* v. *United States, supra*, the protest was dismissed, since no duties had been paid either at the time of filing the protest or subsequently. In *Geo. B. Reading* v. *United States, supra*, the Board of General Appraisers held that it had no jurisdiction where duties had not been paid, but, in a concurring opinion, Judge Adamson stated that the protest should be dismissed, not for lack of jurisdiction, but for failure to comply with the law authorizing the importer to secure relief.

*Champion Coated Paper Co.* v. *United States*, 24 CCPA 83, T.D. 48411, involved drawback entries which the collector reliquidated and then demanded repayment of a refund which had been made previously. A protest was filed against the reliquidation without payment of the amount demanded. The court affirmed the trial court's judgment dismissing the protest, stating that payment was a condition precedent to appellant's right to protest. That case involved the Tariff Act of 1922, which contained, in section 514, the language "and if the merchandise is entered for consumption shall pay the full amount of duties, charges, and exactions ascertained to be due thereon." It was claimed that this must be read to mean that prepayment was not required except as to consumption entries. The court stated that the

purpose of the provision was to obviate the necessity of the payment of duties where goods were entered for transportation or under bond for warehousing, but it was of opinion that the rule of *expressio unius est exclusio alterius*, invoked by appellant, was not applicable. It concluded (pp. 89–90):

> Upon what ground does the appellant base its case? It protests, but against what? It has paid nothing, it has incurred no obligations, it has not been actionably damaged. The defenses which the appellant has against the Government's demand for the payment of money, may be fully asserted if the Government sues the appellant in a district court of the United States. Having such a remedy, it is hard to discern wherein the appellant is damaged. If, on the other hand, the appellant desires to litigate the matter here by protest, which proceeding is, in effect, a suit against the United States, it must first meet the demands of the Government, pay the money claimed to be due, and then proceed by way of protest through the United States Customs Court and this court to a judgment which ought to, and doubtless would, secure it all its legal rights.
>
> Section 514 contemplates in cases of this character that the money shall be in the hands of the Government at the time the protest is filed.

There are a number of cases which have discussed the meaning of the terms "entered," "entered, or withdrawn from warehouse, for consumption," and "entered for consumption" when used in other contexts. *D. Kelman & Co.* v. *United States*, 28 Cust. Ct. 112, C.D. 1396; *Excel Shipping Corp.* v. *United States*, 44 Cust. Ct. 55, C.D. 2153, appeal dismissed 47 CCPA 173; *United States* v. *Mussman & Shafer, Inc.*, 40 CCPA 108, C.A.D. 506.

In the *Kelman* case, it was stated that the words "entered for consumption" had been used in previous trade agreements in contradistinction to the phrase "entered, or withdrawn from warehouse, for consumption," and that they must have been used in the General Agreement on Tariffs and Trade in a seasonal-rate provision for dried beans to cover only those entered directly for consumption during the period, excluding those withdrawn from warehouse for consumption during that time. The court was able to point out a reason why the trade agreement negotiators could have intended the seasonal-rate to apply only to direct entries for consumption.

This case even so was not followed in *Excel Shipping Corp.* v. *United States*, *supra*, which involved the same provision but a somewhat different fact situation. The warehouse entry and withdrawal of beans were both within the seasonal-rate period. The merchandise was warehoused solely to comply with fumigation requirements. The three judges of the division delivered three opinions. Judges Donlon and Richardson held that a warehouse entry solely for fumigation was an entry for consumption within the intent of the trade agreement. Judge Johnson disagreed as to this. All three held, since the warehousing for fumigation could have been accomplished under a con-

sumption entry, the failure to make such an entry was a clerical error correctible under section 520.

*United States* v. *Mussman & Shafer, Inc.*, *supra*, involved the dutiable status of merchandise which had been entered for transportation at New York, sent to Cincinnati, entered, estimated duties paid, and a permit for delivery issued, all before October 25, 1946. By Presidential proclamation, authorized by law, merchandise "entered for consumption or withdrawn from warehouse" October 25, or later, was duty free. Actual release was after October 25. The court approved the trial court's statements that the dutiable status of imported merchandise is to be determined at the time it enters into the commerce of the country and that, in the absence of contrary statutory provision, goods are not "entered" or "withdrawn" for the purpose of determining duties until the transaction is complete by the payment of duties and the issuance of an unconditional delivery permit. Thus, the merchandise was duty free.

The review we have made of the authorities will sufficiently indicate that the phrase "in the case of merchandise entered for consumption" in section 515, *supra*, cannot be held to be of fixed and certain meaning. Common sense tells us that merchandise entered for warehouse and later withdrawn for consumption has thereafter been, to all intents, entered for consumption. It is true that a consumption entry and a warehouse entry are two different technical procedures. But courts have not always been satisfied that Congress and trade agreement negotiators have used the term "entered for consumption" in full view of this technical distinction. They have examined the context and circumstances to ascertain the result actually intended. Abstract 57153, *supra*, stands alone in its insistence on a "clear distinction" in a case of a distinction which is anything but clear. The author of that opinion, Judge Ekwall, later on, tested a like construction by finding a reason, real or imaginary, why trade agreement negotiators, using the phrase "entered for consumption" might have wished to exclude merchandise withdrawn from warehouse for consumption. *D. Kelman & Co.* v. *United States*, *supra*. But in respect of section 515, *supra*, he suggested no reason, in Abstract 57153, *supra*, and the imagination of the writer of this opinion can supply none. To attribute to the Congress an intent that persons who enter for consumption must pay all increased duty when they protest, but persons need not who enter for warehouse and withdraw for consumption before the protest is transmitted to this court, is virtually to attribute an intent to deny equal protection of the laws. Counsel suggest that we would simply put the latter group in the same category as those appealing for reappraisement, who, of course, are not required to deposit anything

above the original estimated duty. But this distinction, whether fully justified or not, at least has some rational basis. For the appellant for reappraisement has not had his duty liquidated and does not know, except approximately, and not always that, what the liquidation duty will be. Our colleague, Judge Donlon, ably states, in *Excel Shipping Corp.* v. *United States, supra,* the slightness of the reasons that may impel an importer to elect between a warehouse and a consumption entry, and the frequent lack of any difference in consequence of the election, as to action actually taken with the merchandise. Certainly, withdrawal from warehouse for consumption eliminates the last rational difference bearing on the dismissal of a protest for nonpayment of full liquidated duties. The Congress and those acting under authority delegated by the Congress may use technical language, at times, with less than perfect correctness. If they do, our proper function is not to "stick" them with their mistakes, but to ascertain and apply their true intent, if we can. And here, we can entertain no doubt as to what the true intent of the Congress was.

For the reasons stated, the protest herein is dismissed. Judgment will be rendered accordingly.