THE A. W. FENTON CO., INC. *v.* UNITED STATES (No. 5237)*

United States Court of Customs and Patent Appeals,
February 15, 1968**

*Allerton DeC. Tompkins* for appellant.

*C.A.D. 933.
**Petition for rehearing denied April 11, 1968.

*Carl Eardley*, Acting Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Steven R. Sosnov* for the United States.

[Oral argument October 3, 1967 by Mr. Tompkins and Mr. Vance]

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, JONES [***]

SMITH, Judge, delivered the opinion of the court:

The issue raised by this appeal is whether section 515 of the Tariff Act of 1930 [1] requires, as a statutory condition for maintaining a protest, the payment of duties found to be due upon the liquidation of a warehouse entry when the merchandise covered by the warehouse entry has been withdrawn from the warehouse for consumption before liquidation. The resolution of that issue turns on the question whether the express language of the statute, "* * * *in the case of merchandise entered for consumption*, if *all* duties and charges shall be paid * * * (emphasis added) requires payment of any increased duties on merchandise entered into a warehouse and later withdrawn from warehouse for consumption prior to liquidation.

The appeal arises from the decision and judgment of the Customs Court, First Division,[2] dismissing appellant's protest against the liquidation of the subject entries by the Collector of Customs at Cleveland, Ohio. The merchandise involved consists of rubber footwear, assessed with duty under paragraph 1537 of the Tariff Act of 1930 [3] at 12½ per centum ad valorem on the American selling price.[4] The goods, covered by 19 entries, were imported into the United States during the period between December 1959 and October 1960. Eight of the entries were entries for consumption, and the remaining eleven entries were warehouse entries. All of the entries were liquidated on June 17, 1963.

On August 16, 1963, appellant filed a protest against the decision of the collector on liquidation. The protested decision was reviewed and affirmed by the collector on September 9, 1963. At the hearing on the protest in the Customs Court at Cleveland on May 12, 1964, the Government moved to dismiss the protest on the ground that the duties due and owing to the Government upon the entries covered by the protest had not been paid, although demand had been made. An affidavit by the Assistant Collector to the same effect, submitted in support of the motion, further indicated that payment had not been tendered.

Appellant conceded that the facts in the affidavit were correct; that the duties were not paid on the warehouse entries prior to the filing

---

[***]Senior Judge, United States Court of Claims, sitting by designation.
[1] 46 Stat. 734, 19 U.S.C. 1515.
[2] 55 Cust. Ct. 74, C.D. 2554 (1965), rehearing denied, 55 Cust. Ct. 476, Abs. 69610 (1965).
[3] As modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865 and T.D. 53877.
[4] T.D. 46158.

of the protest or prior to the liquidation of the entries; and that the warehouse entries were withdrawn for consumption prior to liquidation. Appellant, however, contended that (1) the liquidation was illegal for the reasons that a reappraisement proceeding was pending,[5] and (2) that section 515 of the Tariff Act of 1930 does not require that that the duties must be paid on a warehouse entry prior to protest.

The court below considered appellant's position that the liquidation was illegal to be "untenable," stating, 55 Cust. Ct. at 75:

* * * the law is clear that a motion for a rehearing must be filed within 30 days after judgment and that the court lacks jurisdiction to restore a case to the calendar on a motion made after the expiration of that period. *United States* v. *Williams, Clarke Company,* 52 Cust. Ct. 639, A.R.D. 173.

The appraisement of this merchandise thus became final and conclusive 30 days after the date of the dismissal of the appeals on February 18, 1963. The liquidation on June 17, 1963, was not premature or illegal. Subsequent proceedings in the reappraisement cases were mere nullities.

The applicable statute in pertinent part provides that:

* * * If the collector shall, upon such review [of the protest], affirm his original decision, or if a protest shall be filed against his modification of any decision, and, *in the case of merchandise entered for consumption, if all duties and charges shall be paid,* then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law. * * * [Emphasis and brackets added.]

The court further considered appellant's interpretation of that statute. After an extensive review of prior decisions relating to the pertinent statute,[6] in light of the facts before it, the court below dismissed the protest, stating, 55 Cust. Ct. at 80:

The review we have made of the authorities will sufficiently indicate that the phrase "in the case of merchandise entered for consumption" in section 515, *supra,* cannot be held to be of fixed and certain meaning. Common sense tells us that merchandise entered for warehouse and later withdrawn for consumption has thereafter been, to all intents, entered for consumption. It is true that a consumption entry and a warehouse entry are two different technical pro-

---

[5] Since that time, this court rendered its decision in *A. W. Fenton, Inc.* v. *United States,* 53 CCPA 98, C.A.D. 884 (1966) involving several procedural aspects of the reappraisement proceedings on the same entries.

[6] Appellant relied on *Importers Sales Agents (J. L. Westland & Son)* and *Importers Sales Agent (John L. Westland & Son, Inc.)* v. *United States,* 30 Cust. Ct. 378, Abs. 57153 (1953), later dismissed for lack of prosecution, *Importers Sales Agents* v. *United States,* 35 Cust. Ct. 345, Abs. 59558 (1955), and followed in *Fred Whitaker Co.* v. *United States,* 35 Cust. Ct. 309, Abs. 59463 (1955). The Customs Court discussed *United States* v. *Mussman & Shafer, Inc.,* 40 CCPA 108, C.A.D. 506 (1953); *Sucrest Corp.* v. *United States,* 31 CCPA 220, C.A.D. 275 (1944); *Champion Coated Paper Co.* v. *United States,* 24 CCPA 83, T.D. 48411 (1936); *Excel Shipping Corp.* v. *United States,* 44 Cust. Ct. 55, C.D. 2153 (1960); *D. Kelman & Co.* v. *United States,* 28 Cust. Ct. 112, C.D. 1396 (1952); *Department of the Army* v. *United States,* 25 Cust. Ct. 330, Abs. 54925 (1950); *Geo. B. Reading* v. *United States,* 46 Treas. Dec. 320, T.D. 40457 (1924); *Kolynos Co.* v. *United States,* 25 Treas. Dec. 211, T.D. 33762 (1913).

cedures. But courts have not always been satisfied that Congress and trade agreement negotiators have used the term "entered for consumption" in full view of this technical distinction. They have examined the context and circumstances to ascertain the result actually intended. * * * To attribute to the Congress an intent that persons who enter for consumption must pay all increased duty when they protest, but persons need not who enter for warehouse and withdraw for consumption before the protest is transmitted to this court, is virtually to attribute an intent to deny equal protection of the laws. Counsel suggest that we would simply put the latter group in the same category as those appealing for reappraisement, who, of course, are not required to deposit anything above the original estimated duty. But this distinction, whether fully justified or not, at least has some rational basis. For the appellant for reappraisement has not had his duty liquidated and does not know, except approximately, and not always that, what the liquidation duty will be. Our colleague, Judge Donlon, ably states, in *Excel Shipping Corp.* v. *United States, supra*, the slightness of the reasons that may impel an importer to elect between a warehouse and a consumption entry, and the frequent lack of any difference in consequence of the election, as to action actually taken with the merchandise. Certainly, withdrawal from warehouse for consumption eliminates the last rational difference bearing on the dismissal of a protest for nonpayment of full liquidated duties. The Congress and those acting under authority delegated by the Congress may use technical language, at times, with less than perfect correctness. If they do, our proper function is not to "stick" them with their mistakes, but to ascertain and apply their true intent, if we can. And here, we can entertain no doubt as to what the true intent of the Congress was.

Appellant here argues, as it did below, that the payment of liquidated duties on the warehouse entries [7] is not a prerequisite for protests under section 515, supra, on the basis that the tariff law and the customs regulations provide for two different types of formal entry procedures under which an importer may import his merchandise, i.e., (1) entries for consumption, or consumption entries, and (2) warehouse entries. Appellant attempts to distinguish these procedures under section 515, supra, contending that importation from a bonded warehouse is referred to as a "withdrawal for consumption" or a "withdrawal from warehouse for consumption," and pointing out certain language of the tariff laws and regulations.[8] It further urges that when Congress intends to refer to merchandise that is "both entered for consumption" and "withdrawn from warehouse," it uses either the phrase "entered in bond or for consumption" as found in section 514,[9]

[7] Appellant does not similarly argue with respect to the eight consumption entries.

[8] Appellant contends that the important provisions covering "entries for consumption" appear in sections 484–487, 499 and 505 of the Tariff Act of 1930, and in sections 8.3–8.8 and 8.27 of the Customs Regulations. According to appellant, the pertinent provisions relating to "warehouse entries" are found in section 557 of the Tariff Act and in sections 8.4(f), 8.4(g) and 8.30 of the Regulations.

[9] 19 U.S.C. 1514: * * * all decisions of the collector, * * * as to the rate and amount of duties chargeable, * * * shall, upon the expiration of sixty days after the date of such liquidation, * * * be final and conclusive upon all persons * * * unless the importer * * * shall, within sixty days after, but not before such liquidation, * * * as well in cases of merchandise *entered in bond as for consumption, file a protest in writing* * * * [Emphasis added.]

or the phrase "entered or withdrawn for consumption," as set forth in section 313 (c).

Appellant thus concludes that section 515 requires the payment of duties as a statutory prerequisite to maintain protests against the duties assessed only on merchandise which is "entered for consumption" but not for duties assessed on merchandise which is entered either "in bond," or "withdrawn for consumption."

The Government, in its brief, replies that:

* * * when Congress chose to employ the term "entered for consumption" in sec. 515, *supra*, it did not intend such use in a narrow or restricted sense, but rather, intended it to apply to all merchandise which has *entered* [*the commerce of the United States*] *for consumption:* the purpose being to restrict the right to litigate by protest in cases where the Government has relinquished custody of the merchandise to those instances wherein all duties have been paid thereon.

 * * * * * * *

It is well established in Customs litigation that until such time as any demanded increased duties have been paid, a protestant has not met the preconditions to maintaining litigation in the Customs Court. * * *

The Government thus concludes that section 515 of the Tariff Act requires the payment of duties in protests involving both "consumption entries" and "warehouse entries" when the merchandise has entered into the "commerce" of the United States.

A review of section 515 of the Tariff Act of 1930, and sections of preceding Tariff Acts which correspond to section 515, in light of the decisions thereunder, briefed and discussed by both parties, convinces us that appellant's contentions may not be sustained.

Pursuant to Constitutional authority, Congress has enacted legislation providing for the imposition of duties on imports. While [1] the specific language of a customs statute is the best evidence of congressional intent in construing a statute, e.g., *United States* v. *Border Brokerage Co.*, 48 CCPA 10, C.A.D. 754 (1960), if the meaning of the statute is unclear, resort may be had to other guides for determining the intention of Congress in promulgating the statute. We are here particularly concerned with the policy of providing an importer of goods with the right to seek a remedy against the actions of a customs collector, when the importer believes those actions to be in error.

Congress has determined that the right of the importer to recover should be expressly provided by statute and restricted to particular statutory tribunals. In the successive statutory enactments leading to what is now section 515 of the Tariff Act of 1930, Congress consistently provided that the decision of the collector of customs as to the amount of duty payable would be final and conclusive, unless

protest and appeal were taken by the importer in the manner provided by the statute.[10]

The language of the Supreme Court in *United States* v. *Sherman*, 237 U.S. 146 (1915) is relevant to the policy and the general statutory scheme for recovery from the collector. There, it was stated, 237 U.S. at 152, that:

> * * * The Government will not allow foreign goods to be brought into this country and then litigate with the importer as to the amount of duty. Neither bond, nor security, nor retention of the goods during litigation, will dispense with the necessity of payment. The duty, as assessed by the Collector, must be paid in any event,—not only as a condition of the goods being entered, but also as a condition of the right to file a protest. When that has been done, Congress, in order to prevent injustice, has given the importer, who thus pays and protests, the right to bring the goods into the United States, has granted him the opportunity to review the finding of the Collector and has also given him the promise of a refund in case the Collector is found to have made an overcharge. [Citation omitted.] But this right of review is not an appeal in ordinary course of law and can be exercised only in the statutory method, on statutory conditions before special statutory tribunals of limited jurisdiction.

Appellant, however, insists that the distinction between the phrases "entered for consumption," as used in section 515 of the tariff laws and "withdrawn from warehouse for consumption" which arguably would apply to the merchandise here is meaningful and intentional. It argues that the former phrase means the series of acts which are required of an importer to enter his goods into the commerce of the country by means of a consumption entry. Those words, it contends, should not be extended to include merchandise that is withdrawn from warehouse for consumption.

We have closely examined the position taken by the appellant in the light of the cases upon which it relies. However, we agree with the lower court and the position taken here by the appellee. As we stated in *Champion Coated Paper Co.* v. *United States*, 24 CCPA 83, 89–90, T.D. 48411 (1936):

> * * * The defenses which the appellant has against the Government's demand for the payment of money, may be fully asserted if the Government sues the appellant in a district court of the United States. Having such a remedy, it is hard to discern wherein the appellant is damaged. If, on the other hand, the appellant desires to litigate the matter here by protest, which proceeding is, in effect, a suit against the United States, it must first meet the demands of the Government, pay the money claimed to be due, and then proceed by way of protest through the United States Customs Court and this court to a judgment which ought to, and doubtless would, secure it all its legal rights.

[10] See, eg., the Customs Administrative Act June 10, 1890, c. 407, § 14, 26 Stat. 137 ; the Payne-Aldrich Tariff Act August 5, 1909, c. 6, § 28, 36 Stat. 100 ; Act October 3, 1913, c. 16, § III, N, 38 Stat. 187 ; The Tariff Act of 1922, c. 356, Title IV, § 515, 42 Stat. 970 ; and the Tariff Act of 1930, c. 497, Title IV, §515, 46 Stat. 734 quoted supra.

See also *Department of the Army* v. *United States*, supra, note 6, and cases cited therein; *Kolynos Co.* v. *United States*, supra, note 6.

It is appropriate to note that the Government concedes that there is no requirement for payment of duties upon the entry of goods for warehousing. We hold only that when such merchandise is withdrawn for consumption, the duties and charges must be paid to satisfy that portion of section 515 presently in issue. Our review of the prior statutes and applicable case law convinces us that no persuasive legal or logical reason exists to distinguish between goods "entered for consumption" and goods which have "entered" commerce after withdrawal from the warehouse for the purposes of this provision of the Tariff Act of 1930. We believe that when goods are withdrawn from the warehouse, they are goods "entered for consumption" within the meaning of the portion of section 515 at issue. *Sucrest Corp.* v. *United States*, supra, note 6; *Korlis, Ltd.* v. *United States*, 56 Cust. Ct. 365, C.D. 2660 (1966); *Excel Shipping Corp.* v. *United States*, supra, note 6; *Mussman & Shafer, Inc.* v. *United States*, supra, note 6.

Following the decision of the trial court, appellant moved for a rehearing. In an affidavit appended to its motion, counsel for appellant alleged that the duties due and owing to the United States had been paid. That allegation was apparently based upon certain information contained in an exhibit attached to counsel's affidavit which reflected the fact that refunds, totaling $70,287.90, owing to the appellant-customhouse brokerage firm on other entries for other clients of appellant, have been withheld from the appellant by the Government and are currently being withheld as possible offsets against amounts which may be found to be due and owing to it.

The Government submitted a memorandum in opposition to the motion for rehearing, attached to which was an affidavit of Mr. John K. Cooper, Acting Assistant Collector of Customs for the Port of Cleveland, Ohio. While the affiant agreed that the accounts of his office reflected certain credits to the customhouse brokerage firm, and that no disbursements had been made thereon, Mr. Cooper nevertheless stated that no set-off of this credit had been made against the debit balance contained in the account of the brokerage firm. Such a set-off is apparently not permitted by customs accounting procedure until such time as "protests from liquidations of entries giving rise to the debits in the duty accounts have been finally disposed of." The Customs Court unanimously denied the motion for rehearing.

Basing its argument on section 515, appellant argues that the *withholding* of a substantial sum of money is a real, tangible and harmful "injury." Appellant concludes, in effect, that, under that statute, "injury" need not be *only* in the form of a *payment* predicated upon a

*mutual* understanding of the parties where the importer *tenders* the release of money and the Government *accepts* that payment; the "injury" may be in other forms, as here.

It is a sufficient answer to appellant's position on this point that the funds in the hands of the Government became due to the appellant *long after* the statutory time to perfect the instant protest had expired Appellant's merchandise was liquidated on June 17, 1963. That liquidation would have become final on all parties except for appellant's filing of a protest against the liquidation within sixty days thereof. 19 U.S.C. 1514. In order to obtain a review of the collector's decisions by the Customs Court under 19 U.S.C. 1515, it was appellant's responsibility under that statute, as we have here held, to pay all duties and charges in the case of merchandise which had entered the United States for consumption. Since the Government had held the funds only since November 30, 1964, well after the time for seeking review of the liquidation had expired, we find no merit in the appellant's position. Moreover, the record shows no application of the withheld funds to the protest. Thus, no payment of the required charges has been timely made. See *United States* v. *Isthmian Steamship Co.*, 359 U.S. 314 (1959).

A motion to vacate and set aside the order of dismissal in the reappraisement of the same entries here on review had been filed, allegedly by The Sharwell Bros. Shoe Co. and by Sharyama, Inc., the original consignees of the merchandise in issue. If granted, the liquidations in appellant's view, would be premature, illegal, null and void. Thus, appellant requests that action be deferred until a final decision has been reached on that motion.

It appears that the motion to vacate and set aside the order of dismissal was denied on July 27, 1967, some time after appellant filed its brief.[11] In view of this development, appellant's request to defer the present decision is moot.

In view of the foregoing, the decision and judgment of the lower court is *affirmed*.

UNITED STATES *v.* CAJO TRADING, INC. (No. 5263) *

---

[11] *The A. W. Fenton Co.* v. *United States,* 59 Cust. Ct. —, R.D. 11342 (1967). (See 1 Cust. Bull. No. 33, p. 29, August 16, 1967.)
 *C.A.D. 934.